UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MICHELLE TORRES-MONROE,                                          MEMORANDUM
                              Plaintiff,                         AND ORDER
               - against -
ETERNAL LOBBY LOUNGE, INC., et al.,                              12-CV-4243 (RJD) (JO)
                              Defendants.
-----------------------------------------------------------X

James Orenstein, Magistrate Judge:

All of the defendants in this case arising from an altercation between two guests of a

hotel bar in Puerto Rico seek to transfer venue to the District of Puerto Rico. Docket Entry

("DE") 32; DE 33. Upon referrals from the Honorable Raymond J. Dearie, United States District

Judge, I order the requested transfer for the reasons set forth below.

I.       Background

This case arises from an incident that took place in a hotel bar in the Conrad San Juan

Condado Plaza Hotel and Casino (the "Hotel") in San Juan, Puerto Rico on September 3, 2011.

Plaintiff Michelle Torres-Monroe ("Torres-Monroe") is a resident of Brooklyn, New York who

stayed at the Hotel during her vacation in Puerto Rico. While a guest of the Hotel's lobby bar,

non-party Brendan Martin ("Martin"), another patron of the bar who also resides in New York,

assaulted Torres-Monroe and injured her. Witnesses to the incident include Torres-Monroe's two

traveling companions, one of whom resides in Queens, New York; a Hotel security officer, and

other unnamed members of the Hotel or lounge staff.  Local police responded to the incident and

arrested Martin. Torres-Monroe went to a nearby hospital for medical treatment and then sought

follow-up medical care in New York upon her return home. *See* DE 36 (Opposition declaration

of plaintiff's counsel) ¶¶ 3-6 & Exs. A-C; Complaint ¶¶ 31, 34-38.

On August 24, 2012, Torres-Monroe invoked this court's diversity jurisdiction to sue the various corporate entities that she alleges own and operate both the Hotel and its bar on the ground that each violated its duty to protect her from Martin's assault. DE 1. Specifically, the Complaint names two entities that are alleged to own and operate the bar: defendants Eternal Lobby Lounge, Inc. ("Eternal") and I World Productions, Inc. ("World"), both of which are incorporated in Puerto Rico. DE 1 ("Complaint") ¶¶ 2-3, 12-14. The Complaint also purports to identify four entities that own and operate the Hotel: defendants Conrad Hospitality, LLC, and Conrad Hotels Worldwide, LLC (collectively, "Conrad"), and defendants Hilton Hotels Corp. and Hilton Worldwide, Inc. (collectively, "Hilton"), all of which the Complaint alleges to be Delaware corporations. *Id*. ¶¶ 4-7, 15-20. The Complaint further alleges that Conrad and Hilton rent space in the Hotel's lobby to Eternal and World. *Id*.  ¶¶ 21-28.[1] All of those defendants now seek to transfer the case to Puerto Rico, where the events at issue occurred. DE 32 (joint motion of Eternal, World, and Conrad to transfer); DE 33 (Hilton's motion to dismiss or transfer).

II.    Discussion

As a threshold matter, I note that all of the defendants except Hilton assert that they have no presence in New York, and that the court therefore lacks personal jurisdiction over them. Gerard Aff. ¶¶ 8-10, 11, 15; *but see* Complaint ¶¶ 9, 10 (alleging that "the defendants regularly do business in the State of New York" and that "the defendants regularly solicit and advertise its

---

[1] Counsel for the non-Hilton defendants affirms that defendant World's correct name is "1 World Productions, Inc." rather than "I World Productions, Inc." and that the Hotel is in fact operated by Posadas de Puerto Rico Associates LLC, d/b/a Hotel 516 Conrad Condado Plaza ("Posadas"), a Delaware company, with its principal office in Puerto Rico, which has appeared on behalf of the Conrad defendants. DE 32-1 ("Gerard Aff.")  ¶ 8. The two named Hilton defendants appear in fact to be a single entity now named Hilton Worldwide, Inc. and formerly known as Hilton Hotels Corp. *See* DE 33-1 ¶ 1.

[sic] businesses in the State of New York"). Hilton, meanwhile, also seeks dismissal on a theory

of *forum non conveniens*. As a magistrate judge, I lack the authority to order dismissal (though I

could of course recommend it if warranted), and therefore do not rule on that portion of the

defendants' motion. However, such a resolution is not necessary in order to address the

defendants' alternative request to transfer venue to the District of Puerto Rico. *See Hernandez v.*

*Graebel Van Lines*, 761 F. Supp. 983, 992 (E.D.N.Y. 1991) (resolving questions of personal

jurisdiction is unnecessary prior to a court's exercise of its discretion to transfer venue). Because

I conclude that such a transfer is warranted in the interest of justice, I resolve the motions by

ordering that relief, which renders moot the requests for dispositive relief predicated on the

defendants' view that venue in the Eastern District of New York is improper.[2]

The defendants seek a transfer pursuant to 28 U.S.C. § 1406(a), which provides for a

discretionary transfer in the interest of justice where venue has been laid in an improper forum.

Torres-Monroe disputes their arguments as to whether venue is proper in this district, but I

conclude that the dispute is essentially moot. Even assuming, as I do for purposes of analysis,

that venue is proper in this district, I nevertheless can and do *sua sponte* consider whether

---

[2] To the extent that the parties may seek review of this order pursuant to Federal Rule of Civil Procedure 72(a), I note that in the absence of a transfer, I would at a minimum recommend further threshold inquiry into the question of personal jurisdiction over the non-Hilton defendants. In that regard, I note that the portion of the Complaint that generally alleges that the defendants "do business" and "regularly solicit and advertise [their] businesses in the State of New York" is manifestly boilerplate: in addition to the fact that those allegations are formulated in general terms rather than distinguishing among individual defendants, the paragraphs appear to have been pasted into the Complaint from some other document without the author having made any effort to conform the font of those paragraphs to the font used for the case-specific allegations in the surrounding paragraphs. *See* Complaint at 2. In contrast, counsel affirms on behalf of Eternal, World, and Conrad that none of those entities has any presence in New York, and that assertion seems far more consistent with the nature of the defendants' respective businesses – particularly with respect to Eternal and World – than the plaintiff's conclusory allegation to the contrary.

transfer to the District of Puerto Rico is appropriate "[f]or the convenience of the parties and in the interests of justice[.]" 28 U.S.C. §1404(a); *see Haskel v. FPR Registry, Inc.*, 862 F. Supp. 909, 916 (E.D.N.Y. 1994) (citing *Starnes v. McGuire*, 512 F.2d 918, 933-34 (D.C. Cir. 1974) (en banc)); *see also Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 80 (2d Cir. 1978) (a court may transfer a case in the interests of justice even if it lacks personal jurisdiction over a party and venue is improper in the transferor forum); *Morales v. Schofield*, 174 F.R.D. 253, 258 (E.D.N.Y. 1997) (same).

Where, as here, defendants are not all residents of the same state, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2); *see Morales*, 174 F.R.D. at 258-59 (E.D.N.Y. 1997). Torres-Monroe thus properly acknowledges that venue is proper in the District of Puerto Rico, where the assault at issue occurred. *See* DE 36-1 (memorandum in opposition) at 5. The question thus becomes whether that district is clearly the better place to litigate the instant case than this one. I conclude that it is.

In considering a transfer in the interest of justice, I must weigh several factors, including the plaintiff's choice of forum, the convenience of witnesses, the location of relevant documents and relative ease of access to sources of proof, the convenience of parties, the locus of operative facts, the availability of process to compel the attendance of unwilling witnesses, and the relative means of the parties. *See*, *e.g.*, *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (internal quotation marks and citation omitted). The movants bear the burden to clearly establish that a transfer is appropriate. *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *abrogated on other grounds by Pirone v. MacMillan, Inc.*, 894

F.2d 579 (2d Cir. 1990); *Laumann Mfg. Corp. v. Castings USA, Inc.*, 913 F. Supp. 712, 720 (E.D.N.Y. 1996) (citations omitted). The first factor – Torres-Monroe's choice to litigate her claims in this district – weighs heavily in the balance. All of the remaining factors, however, favor a transfer, and their combined weight clearly outweighs Torres-Monroe's preference to prosecute her claims in her home district. *See Hernandez*, 761 F. Supp. at 990-91 ("where the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is … given reduced significance").

Almost all of the pertinent events at issue occurred in Puerto Rico, including those relevant to the alleged assault and Torres-Monroe's initial medical treatment. The District of Puerto Rico will therefore necessarily be the location of much of the evidence and the place where the parties will have the easiest access to sources of proof. Indeed, to the extent that records such as police or hospital records not already in the parties' hands may have to be subpoenaed from non-parties in Puerto Rico, any such subpoenas will necessarily issue from the district court in Puerto Rico, and any resulting litigation will likewise occur in that court. *See* Fed. R. Civ. P. 45(a)(2)(C). Moreover, the fact that Torres-Monroe sought some medical treatment for her injuries in New York (after first being treated in Puerto Rico) does not undermine the proposition that the locus of operative facts is Puerto Rico. *See*, *e.g.*, *Donde v. Romano*, 2010 WL 3173321, at *2 (E.D.N.Y. Aug. 10, 2010).

In addition, the location of witnesses favors Puerto Rico, both as a matter of convenience to non-parties and fairness to the parties. New York would of course be most convenient for Torres-Monroe and her New York-based companion, but they at least have a demonstrated ability to travel to Puerto Rico when it suits them to do so. On the other hand, non-party

5

employees or guests of the Hotel or bar who witnessed the events surrounding the assault at issue will be decidedly inconvenienced if forced to testify in New York, and there is no basis to assume that they have the means to travel here if called upon to do so. More fundamentally, it would be unfair to the parties to try the case without allowing them an opportunity to call such non-party witnesses from Puerto Rico – and yet such witnesses would be beyond the parties' ability to subpoena for trial in New York. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii) (requiring a court to quash a subpoena that requires a non-party to travel more than 100 miles).[3]

I similarly find that the convenience of the parties favors transfer: Torres-Monroe is the only party for which New York is convenient, whereas Puerto Rico is plainly more convenient for Eternal, World, and Posadas, all of which maintain offices and conduct business in San Juan. That balance is not disturbed by the argument, *see* DE 36-1 (memorandum in opposition) at 5, that Torres-Monroe would be required to retain new counsel in Puerto Rico; there is no reason to believe either that her current counsel would be refused the courtesy of admission *pro hac vice* in Puerto Rico or that Torres-Monroe would have any difficulty in finding a local substitute, should current counsel prefer not to travel there. *See Donde*, 2010 WL 3171121 at *3 (declining to give weight to the argument that plaintiff's current counsel was not admitted in the transferee forum). Taking all of the factors into consideration, I conclude that the movants have clearly established that it is in the interest of justice to transfer this action to the District of Puerto Rico.

---

[3] In analyzing the availability and convenience of witnesses, I exclude from consideration any preference Martin might have. Like Torres-Monroe, he resides in New York and manifestly has the means to travel to Puerto Rico. However, he also has a constitutional right not to incriminate himself by testifying in the trial of this case about his criminal acts, and there is no reason to assume he would waive that right even if compelled to appear in either district.

III.    Conclusion

For the reasons set forth above, I grant the defendants' motions in part and respectfully direct the Clerk to transfer this action to the United States District Court for the District of Puerto Rico. I further direct the Clerk to stay execution of this order until the plaintiff has exhausted her right to seek review pursuant to Federal Rule of Civil Procedure 72(a) no later than May 28, 2013.

SO ORDERED.

Dated:  Brooklyn, New York
        May 10, 2013

                                            _____/s/_____
                                            JAMES ORENSTEIN
                                            U.S. Magistrate Judge

7